**ORAL ARGUMENT SCHEDULED FOR MAY 6, 2015 AT 9:30 A.M.**

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

## No. 14-7036

### TJGEM LLC,

*Plaintiff-Appellant*,

**v.**

### REPUBLIC OF GHANA, *et al.*

*Defendants-Appellees.*

_____

*On Appeal from the District Court for the District of Columbia,*
*Case No. 1:13-cv-00382-BAH (Hon. Beryl A. Howell, Judge)*

_____

### JOINT APPELLEES BRIEF
_____

**JUAN C. BASOMBRIO** (*pro hac vice*)
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA  92626
Telephone:  (714) 800-1405
basombrio.juan@dorsey.com

**CREIGHTON R. MAGID**
Dorsey & Whitney LLP
1801 K Street, N.W., Suite 750
Washington, DC  20006
Telephone:  (202) 442-3555
Fax:  (202) 442-3199
magid.chip@dorsey.com

Counsel for Appellees Republic of Ghana, Accra Metropolitan Assembly,
Alfred O. Vanderpuije, and Kwabena Duffuor

**ROBERT J. CYNKAR**
McSweeney, Cynkar & Kachouroff
10506 Milkweed Drive
Great Falls, VA  22066
Telephone: (703) 621-3300
rcynkar@mck-lawyers.com

**RICHARD GREENBERG**
Greensfelder, Hemker & Gale, P.C.
10 South Broadway, Suite 2000
St. Louis, MO  63102
Telephone:  (314) 241-9090
reg@greensfelder.com

Counsel for Appellees Kwame Building Group, Inc., Anthony Thompson, and
Craig Lucas

DATED:  March 9, 2015

**RONAN J. MCHUGH**
Gordon & Rees, LLP
1300 I Street, N.W., Suite 825
Washington, D.C.  20005
Telephone:  (202) 399-1009
Fax:  (202) 800-2999
rmchugh@gordonrees.com
      Counsel for Appellees Gideon Adjetey and Jonathan Adjetey

**HARVEY A. LEVIN**
Thompson Cobum LLP
1909 K Street, N.W., Suite 600
Washington, DC 20006
Telephone:  (202) 585-6942
hlevin@thompsoncobum.com

**STEVEN D. HODGES** (*pro hac vice*)
Corporate Counsel
The Conti Group
2045 Lincoln Highway
Edison, NJ  08817-3334
Telephone:  (732) 520-5000
shedges@conticorp.com
    Counsel for Conti International, LLC, Conti Federal Services, Inc., Conti
        International II, LLC and Conti Ghana Infrastructure Ltd.

March 9, 2015

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Appellees Republic of Ghana, Accra Metropolitan Authority, Alfred O. Vanderpuije and Kwabena Duffuor (collectively, the "Ghanaian Appellees"); Conti International, LLC, Conti Federal Services, Inc., Conti International II, LLC, and Conti Ghana Infrastructure Ltd. ("Conti"); Kwame Building Group, Inc., Anthony Thompson, and Craig Lucas (collectively, the "Kwame Appellees"); and Gideon Adjetey and Jonathan Adjetey[1] (collectively, the "Adjetey Appellees") hereby submit the following Certificate as to Parties, Rulings, and Related Cases.

**A. Parties and Amici.**

- Appellant and Plaintiff in the District Court, TJGEM LLC.

- Appellee and Defendant in the District Court, Republic of Ghana.

- Appellee and Defendant in the District Court, Accra Metropolitan Authority.

- Appellee and Defendant in the District Court, Alfred O. Vanderpuije.

- Appellee and Defendant in the District Court, Kwabena Duffuor.

- Appellee and Defendant in the District Court, Conti International LLC.

- Appellee and Defendant in the District Court, Conti Federal Services, Inc.

---

[1] Although named as a defendant, TJGEM never served Mark Adjetey.

-i-

- Appellee and Defendant in the District Court, Conti International II, LLC.

- Appellee and Defendant in the District Court, Conti Ghana Infrastructure Ltd.

- Appellee and Defendant in the District Court, Kwame Building Group, Inc.

- Appellee and Defendant in the District Court, Anthony Thompson.

- Appellee and Defendant in the District Court, Craig Lucas.

- Appellee and Defendant in the District Court, Gideon Adjetey.

- Appellee and Defendant in the District Court, Jonathan Adjetey.

- Appellee and Defendant in the District Court, Conti Group, agent of Conti Federal Services, Inc., agent of Conti International Ghana LLC, agent of Conti International LLC, agent of Conti International II LLC, agent of Conti Ghana Infrastructure Ltd., agent of Conti Group – West Africa.

**B. Rulings under Review.**

- On March 20, 2014, the TJGEM, LLC appealed the District Court's December 31, 2013 Order (Docket Entry No. 108) and Memorandum Opinion (Docket Entry No. 107) entered in Civil Action No. 1:13-cv-00382-BAH, wherein the District Court granted the Ghanaian

Appellees' Motion to Dismiss and dismissed the matter as to all defendants.

**C. Related Case.**

- None

Dated:  March 9, 2015                    Respectfully submitted,

/s/ Creighton R. Magid
Creighton R. Magid
Dorsey & Whitney LLP
1801 K Street, N.W., Suite 750
Washington, D.C.  20006
Telephone:  (202) 442-3555
Fax:  (202) 442-3199
magid.chip@dorsey.com

Juan C. Basombrio (*pro hac vice*)
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA  92626
Telephone:  (714) 800-1405
basombrio.juan@dorsey.com

Counsel for Appellees Republic of Ghana,
Accra Metropolitan Assembly, Alfred O.
Vanderpuije, and Kwabena Duffuor

/s/
Robert J. Cynkar
McSweeney, Cynkar & Kachouroff , PLLP
10506 Milkweed Drive
Great Falls, VA  22066
Telephone:  (703) 621-3300
rcynkar@mck-lawyers.com

Richard Greenberg
Greensfelder, Hemker & Gale
10 South Broadway, Suite 2000
St. Louis, MO 63102
Telephone:  (314) 241-9090
reg@greensfelder.com

Counsel for Appellees Kwame Building
Group, Inc., Anthony Thompson, and Craig
Lucas


*/s/*_____
Ronan J. McHugh
Gordon & Rees, LLP
1300 I Street, N.W., Suite 825
Washington, D.C.  20005
Telephone:  (202) 399-1009
Fax:  (202) 800-2999
rmchugh@gordonrees.com

Counsel for Appellees Gideon Adjetey and
Jonathan Adjetey


*/s/*_____
Harvey A. Levin
Thompson Cobum LLP
1909 K Street, N.W., Suite 600
Washington, DC 20006
Telephone:  (202) 585-6942
hlevin@thompsoncobum.com

Steven D. Hodges (*pro hac vice*)
Corporate Counsel
The Conti Group
2045 Lincoln Highway
Edison, NJ  08817-3334
Telephone:  (732) 520-5000
shedges@conticorp.com

Counsel for Conti International, LLC, Conti
Federal Services, Inc., Conti International II,
LLC and Conti Ghana Infrastructure Ltd.
(the "Conti Entities")

## <u>CORPORATE DISCLOSURE STATEMENT OF THE CONTI APPELLEES, CONTI INTERNATIONAL, LLC, CONTI FEDERAL SERVICES, INC., CONTI INTERNATIONAL II, LLC, AND CONTI GHANA INFRASTRUCTURE LTD.</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, the Conti Appellees, consisting of Conti International, LLC, Conti Federal Services, Inc., Conti International II, LLC and Conti Ghana Infrastructure Ltd., make the following corporate disclosures: No publicly held company owns 10% or more of Conti stock or other interest in any Conti Appellee, and the Conti Appellees and Conti affiliates have no holding company.

Respectfully submitted,

/s/ Harvey A. Levin
Harvey A. Levin (D.C. Bar No. 203869)
THOMPSON COBURN LLP
1909 K Street, N.W. Suite 600
Washington, D.C.  20006-1167
Telephone: (202) 585-6942 (direct)
Fax: (202) 508-1013 (direct)
hlevin@thompsoncoburn.com

Counsel for Conti International, LLC, Conti Federal Services, Inc., Conti International II, LLC and Conti Ghana Infrastructure Ltd.

## <u>CORPORATE DISCLOSURE STATEMENT OF APPELLEE KWAME<br>BUILDING GROUP, INC.</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, as well as Circuit Rule 26.1, Appellee Kwame Building Group, Inc. ("Kwame") makes the following corporate disclosure statement: No publicly held company owns 10% or more of Kwame stock, and Kwame has no parent company.

Respectfully submitted,


/s/ Richard Greenberg
Richard E. Greenberg
reg@greensfelder.com
Greensfelder, Hemker & Gale, PC
10 South Broadway, Suite 2000
St. Louis, Missouri  63102
(314) 241-9090
(314) 345-5466 (Facsimile)

Counsel for Kwame Building Group, Inc., Anthony Thompson, and Craig Lucas

## **RULE 26.1 DISCLOSURE STATEMENT**

Pursuant to D.C. Circuit Rule 26.1 and Federal Rule of Appellate Procedure 26.1, Appellees submit the following additional disclosure statements:

The Republic of Ghana is a foreign sovereign.  It therefore does not have a parent company, and no entity has any ownership interest in the Republic of Ghana.

Accra Metropolitan Authority is an organ of the Republic of Ghana.

Alfred O. Vanderpuije is an individual.

Kwabena Duffuor is an individual.

Anthony Thompson is an individual.

Craig Lucas is an individual.

Gideon Adjetey is an individual.

Jonathan Adjetey is an individual.

Dated:  March 9, 2015                    Respectfully submitted,

*/s/* Creighton R. Magid
Creighton R. Magid
Dorsey & Whitney LLP
1801 K Street, N.W., Suite 750
Washington, D.C.  20006
Telephone:  (202) 442-3555
Fax:  (202) 442-3199
magid.chip@dorsey.com

Juan C. Basombrio (*pro hac vice*)
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA  92626
Telephone:  (714) 800-1405
basombrio.juan@dorsey.com


*/s/*_____

Robert J. Cynkar
McSweeney, Cynkar & Kachouroff , PLLP
10506 Milkweed Drive
Great Falls, VA  22066
Telephone:  (703) 621-3300
rcynkar@mck-lawyers.com

Richard Greenberg
Greensfelder, Hemker & Gale
10 South Broadway, Suite 2000
St. Louis, MO 63102
Telephone:  (314) 241-9090
reg@greensfelder.com

Counsel for Appellees Kwame Building
Group, Inc., Anthony Thompson, and Craig
Lucas


*/s/*_____

Ronan J. McHugh
Gordon & Rees, LLP
1300 I Street, N.W., Suite 825
Washington, D.C.  20005
Telephone:  (202) 399-1009
Fax:  (202) 800-2999
rmchugh@gordonrees.com

Counsel for Appellees Gideon Adjetey and
Jonathan Adjetey

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

CORPORATE DISCLOSURE STATEMENT OF THE CONTI APPELLEES,
    CONTI INTERNATIONAL, LLC, CONTI FEDERAL SERVICES, INC.,
    CONTI INTERNATIONAL II, LLC,  AND CONTI GHANA
    INFRASTRUCTURE LTD. ...........................................................................vi

CORPORATE DISCLOSURE STATEMENT OF APPELLEE KWAME
    BUILDING GROUP, INC. ........................................................... vii

RULE 26.1 DISCLOSURE STATEMENT.......................................... viii

TABLE OF AUTHORITIES ................................................. xii

GLOSSARY...............................................................................xv

ISSUES PRESENTED FOR REVIEW ...................................................1

STATEMENT OF THE CASE.................................................................2

STANDARD OF REVIEW ...................................................................12

SUMMARY OF THE ARGUMENT ....................................................13

ARGUMENT .......................................................................................16

I.    The District Court Properly Dismissed the Republic and the AMA on the
      Grounds of Foreign Sovereign Immunity.....................................................16

      A.    The District Court Correctly Held That the Commercial
            Activity Exception Does Not Apply to This Case. .............................17

      1.    TJGEM Offered Only Assertions, Not Evidence, In Its Attempt
            to Overcome the Presumption of Sovereign Immunity. .....................18

      2.    The District Court Properly Held That None of TJGEM's
            Causes of Action Is "Based Upon Commercial Activity Carried
            on in the United States."....................................................................19

      3.    The District Court Correctly Held That the Alleged Conduct of
            Defendant Vanderpuije Does Not Constitute Conduct By a

        "Foreign State." .................................................................................21

        4.    The District Court Properly Held That the Alleged Commercial
              Activity in Ghana Did Not Have a Direct Effect in the United
              States.......................................................................................25

        B.    The FSIA's Waiver Exception Does Not Apply.................................27

II.    The District Court Did Not Abuse Its Discretion in Dismissing the
       Remaining Appellees Under Rule 19 and *Pimentel*.....................................29

III.   The District Court Properly Admitted the Declarations and Exhibits
       Offered by the Ghanaian Defendants on the Issue of Subject Matter
       Jurisdiction....................................................................................35

       CONCLUSION ..................................................................................36

# TABLE OF AUTHORITIES

## Cases

*Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989)................16

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d
    1175 (D.C. Cir. 2013)................................................................................ 9, 16, 26

*Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank of Washington*,
    699 F.2d 1274 (D.C. Cir. 1983) ........................................................12

*Coalition for Underground Expansion v. Mineta*, 333 F.3d 193 (D.C. Cir.
    2003)........................................................................................................8, 35

*Dale v. Colagiovanni*, 443 F.3d 425 (5th Cir. 2006)..............................................22

*District of Columbia v. Doe*, 611 F.3d 888 (D.C. Cir. 2010) ................................29

*East Europe Int'l Sales Corp. v. Terra*, 467 F. Supp. 383 (S.D.N.Y. 1979)...........24

*FDIC v. Bender*, 127 F.3d 58 (D.C. Cir. 1997) .......................................................33

*Gammill v. U.S. Dep't of Educ.*, 2013 WL 6053544 (Nov. 18, 2013) .....................8

*Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143 (D.C. Cir. 1994) ...................20

*GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805 (D.C. Cir. 2012) ........................28

*Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192 (D.C. Cir. 1992) .................35

*In re Republic of Philippines*, 309 F.3d 1143 (9th Cir. 2002)................................30

*Kellmer v. Raines*, 674 F.3d 848 (D.C. Cir. 2012) .................................................12

*Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d
    1094 (D.C. Cir. 1982)........................................................................................10

*Ord v. District of Columbia*, 587 F.3d 1136 (D.C. Cir. 2009) ...............................35

*Phaneuf v. Rep. of Indonesia*, 106 F.3d 302 (9th Cir. 1997)............. 21, 22, 23, 24

*Philippines v. Pimentel*, 553 U.S. 851 (2008) ............. 1, 5, 7, 8, 10, 14, 29, 30, 31, 32, 33, 34

*Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36 (D.C. Cir. 2000) ...........18

*Potter v. District of Columbia*, 558 F.3d 542 (D.C. Cir. 2009)...............................24

*Princz v. Federal Republic of Germany*, 26 F.3d 1166 (D.C. Cir. 1994)......... 12, 17

*Republic of Argentina v.Weltover, Inc.,* 504 U.S. 607 (1992)......................... 25, 26

*Samantar v. Youself*, 560 U.S. 305 (2010)................................................................29

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ......................................... 16, 20, 25

*Shankar v. ACS-GSI*, 28 Fed.Appx. 344 (D.C. Cir. 2007) ......................................33

*Southway v. Central Bank of Nigeria*, 198 F.3d 1210 (10th Cir. 1999) .................27

*Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013) ...........16

*TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005)..................................................................................................................16

*Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843 (D.C. Cir. 2000).................................................................................................12

*U.S. v. Brockenborrugh*, 575 F.3d 726 (D.C. Cir. 2009)........................................12

*United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232 (10th Cir. 1994) .......................................................................................26

*Velasco v. Gov't of Indonesia*, 370 U.S. 392 (4th Cir. 2004)..................................22

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) ...........................16

*W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., International*, 493 U.S. 400 (1990) .........................................................................................34

*Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145 (2nd Cir.1991), *aff'd*, 504 U.S. 607 (1992) .........................................................................................26

## Statutes

28 U.S.C. § 1602(a)(1)................................................................28

28 U.S.C. § 1603(a)-(b) ............................................................16

28 U.S.C. § 1603(e) ..................................................................19

28 U.S.C. § 1604 ......................................................................16

28 U.S.C. § 1605(a)(2)................................................... 17, 21, 25

28 U.S.C. §§ 1605-07 ...............................................................16

## Rules

Fed. R. Civ. P. 8 ........................................................................6

Fed. R. Civ. P. 12(b)(1) ................................................ 1, 4, 15, 35

Fed. R. Civ. P. 12(b)(2)...........................................................4, 7

Fed. R. Civ. P. 12(b)(6) ..............................................................4

Fed. R. Civ. P. 19 ........................................................ 10, 14, 29

Fed. R. Civ. P. 19(a)...................................................... 14, 30

Fed. R. Civ. P. 19(a)(1)(B) ........................................................32

Fed. R. Civ. P. 19(b) ..............................................................6, 30

Fed. R. Civ. P. 44.1 ..................................................................35

*Authorities upon which Appellees chiefly rely are marked with asterisks.

## <u>GLOSSARY</u>

FAC                                    First Amended Complaint

FSIA                                   Foreign Sovereign Immunities Act, 28 U.S.C.
                                       §§ 1602, *et seq.*

TJGEM                                  TJGEM, LLC

RICO                                   Racketeer Influenced and Corruption
                                       Organizations Act, 18 U.S.C. §§ 1962, *et seq.*

## ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court properly dismissed the action as to the Republic of Ghana and an organ of the Republic, the AMA, for want of subject matter jurisdiction on the grounds that the entities are entitled to foreign sovereign immunity under the FSIA.

2.     Whether the District Court abused its discretion in following *Philippines v. Pimentel*, 553 U.S. 851 (2008), and dismissing the action as to the remaining Appellees after dismissing the Republic of Ghana and the AMA, where allowing the action to proceed would give rise to substantial potential for injury to the interests of the absent sovereign.

3.     Whether the District Court committed clear error in considering declarations and exhibits submitted by the Ghanaian Defendants in support of their Fed. R. Civ. P. 12(b)(1) Motion to Dismiss on grounds of foreign sovereign immunity, where the Rule contemplates consideration of such materials.

-1-

## STATEMENT OF THE CASE

Appellant TJGEM, LLC ("TJGEM"), a newly-formed company with no international construction experience, sought a contract for a multi-million dollar project to improve the sewer and water systems of Accra, Ghana's capital city. Appx. 1395. After the contract was awarded to Appellee Conti International, Inc. ("Conti"), an experienced international construction company, TJGEM filed this lawsuit against the Republic of Ghana ("the Republic"); the Accra Metropolitan Authority ("AMA"); AMA's Metropolitan Chief Executive, Alfred O. Vanderpuije; Kwabena Duffuor, a former Ghanaian Minister of Finance; Conti International, LLC and its related entities ("Conti"); Kwame Building Group, a putative subcontractor in TJGEM's contract bid, and two of Kwame Building Group's employees, Anthony T. Thompson and Craig Lucas (collectively "the Kwame Defendants"); and three founding members of TJGEM, Gideon, Mark and Jonathan Adjetey (collectively "the Adjetey Defendants"). Appx. 1395.

TJGEM was incorporated in January, 2011, for the apparent purpose of pursuing projects in Ghana. Appx. 1396 -97. From January 2011 through March 2012, TJGEM pursued a contract to reconstruct the Accra sewer system. Appx. 1397. As part of these negotiations, TJGEM's members and agents flew to Ghana on multiple occasions. Appx. 1397. TJGEM apparently spent much of its time discussing the proposed project with Vanderpuije, whose position as Metropolitan

Chief Executive is akin to a mayor in the United States. Appx. 1397. During the negotiations, TJGEM conceded it learned that Vanderpuije lacked the authority to enter into contracts for the sewer project, and that "only the central government could contract for and finance the Accra sewer system project" because "under Ghana's constitution and statutes, the central government borrows funds and the central government by and through its cabinet level members enter [sic] into such contracts, subject to the approval of financing by parliament." Appx. 1397.

TJGEM claims that, in the course of pursuing a contract for the sewer reconstruction contract, it voluntarily provided Vanderpuije and others with draft contracts and a business plan that TJGEM characterizes as "trade secrets." Appx. 1398. TJGEM does not claim that it ever asked anyone associated with the project to sign a confidentiality agreement, Appx. 1398, and appended complete, un-redacted versions of the documents in question with the District Court as exhibits to its First Amended Complaint. Appx. 1409, n. 9.

TJGEM also alleges it was able to secure a loan from the Export-Import Bank for Ghana in the amount "of $587,937,500 to finance the sewer project upon Ghana entering into a contract with TJGEM as developer of the project and [the Kwame Defendants] as subcontractor to TJGEM on the project." Appx. 1398-99.

TJGEM further claims that Vanderpuije sought bribes from TJGEM and that TJGEM's refusal to provide bribes – along with Conti's alleged agreement to

inflate the value of its contract to fund "bribes and kickbacks" for Vanderpuije –
caused the Republic to award the contract for the sewer project to Conti. Appx.
110-11, 1399. TJGEM also claims that a Memorandum of Understanding
concerning the sewer rehabilitation program executed by Conti and Vanderpuije
either comprised or contained TJGEM's purported "trade secrets." Appx. 111,
1399.

TJGEM filed this lawsuit in the District Court on March 22, 2013, and,
following a motion to dismiss, filed a First Amended Complaint ("FAC") on July
24, 2013. Appx. 8 – 9, 1399. TJGEM's FAC asserted seven claims for relief: (1)
"Misappropriation and Conversion of Trade Secrets" against all defendants; (2)
tortious interference with a business relationship against the Adjetey Defendants;
(3) tortious interference with a business relationship against the Kwame
Defendants; (4) tortious interference with a business relationship against the Conti
Defendants; (5) RICO and Hobbs Act violations against all defendants; (6)
common law fraud against Vanderpuije and Duffuor; and (7) conspiracy to defraud
against all defendants. Appx. 1399.

On September 6, 2013, the Ghanaian Defendants filed a Motion to Dismiss
TJGEM's FAC pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2),
and 12(b)(6). The Motion to Dismiss argued, *inter alia*, that the District Court
lacked subject matter jurisdiction over the dispute because the Republic of Ghana

and the AMA were entitled to foreign sovereign immunity pursuant to the FSIA.

The Motion to Dismiss explained that the FSIA's "commercial activity" exception

did not apply because TJGEM's FAC did not allege any commercial activity by the

Republic or the AMA either (a) in the United States or (b) outside of the United

States but with a direct effect in the United States.  Rather, TJGEM's claims arose

out of and were solely based upon alleged tortious acts by the Ghanaian officials in

Ghana.  *See* Appx. 838-93.

The Ghanaian Defendants' Motion further argued that, under *Pimentel*, the

claims against the remaining defendants must be dismissed to give full effect to the

sovereign immunity of the Republic and the AMA.  The Motion to Dismiss also

asserted arguments—which are not on appeal—that the complaint should be

dismissed based on the act of state doctrine, *forum non conveniens* grounds,

principles of international comity and abstention, the absence of personal

jurisdiction over the Ghanaian Defendants, and a failure to state a claim upon

which relief could be granted.  *See* Appx. 838-93.

The Conti Defendants filed a Motion to Dismiss on August 6, 2013.  The

Conti Defendants argued that TJGEM had failed to state an actionable claim for

tortious interference under Ghanaian law, which the Conti Defendants argued was

the applicable law, because Ghana only recognizes tortious interference claims

with respect to actual, not prospective, contracts.  Further, the Conti Defendants

argued that, even under District of Columbia law, TJGEM had failed to assert an actionable claim for tortious interference against Conti because there was no valid business relationship, no knowledge by Conti of a valid business relationship, no intentional interference by Conti, and no damage. Conti further argued that TJGEM's remaining claims failed to find support in Ghanaian law, and lacked factual support under District of Columbia law. Finally, Conti argued that, if (as ultimately occurred), the Republic and the AMA were dismissed on foreign sovereign immunity grounds, the remaining defendants should be dismissed under Fed. R. Civ. P. 19(b) for reasons of "equity and good conscience." *See* Appx. 720-833.

The Kwame Defendants likewise moved to dismiss, on September 10, 2013. The Kwame Defendants argued that the District Court lacked personal jurisdiction over them, that the FAC failed to state a claim upon which relief could be granted, that the FAC failed to comply with the requirement of Fed. R. Civ. P. 8 for a "short and plain statement of the claim showing that the pleader is entitled to relief," and that TJGEM failed to state an actionable claim for tortious interference with a business relationship. The Kwame Defendants also joined in the arguments set forth in the Ghana Defendants' and in Conti's motions to dismiss. *See* Appx. 1048-53.

TJGEM's opposition to the Ghana Defendants' Motion to Dismiss was

almost wholly devoid of substantive argument on the foreign sovereign immunity issue. *See* Appx. 1087-1135. The gravamen of TJGEM's opposition to the Motion on the issue of foreign sovereign immunity was that merely *pleading* the "commercial activity" exception sufficed to overcome the presumption of foreign sovereign immunity. TJGEM did not introduce any extrinsic evidence rebutting the Ghanaian Defendants' jurisdictional arguments. TJGEM merely asserted thirteen conclusory "facts," without supporting citations. Appx. 1104 - 5. TJGEM did not even attempt to explain how its alleged "facts" brought its claims within any of the three prongs of the commercial activity exception under relevant FSIA case law. TJGEM did not even address the arguments with respect to Fed. R. Civ. P. 19 and *Pimentel*.

TJGEM also filed a motion to strike the declarations filed with the Ghanaian Defendants' Motion to dismiss, arguing primarily that presentation of facts outside the pleadings was inappropriate on a motion to dismiss—an argument that failed to recognize that extrinsic evidence is appropriate on a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(2). See Appx. 1059-1084. Finally, TJGEM filed a motion to stay and a frivolous and procedurally-barred motion for sanctions against Vanderpuije and his defense counsel.

On December 31, 2013, the District Court issued its Memorandum Opinion granting the Ghanaian Defendants' Motion to Dismiss, denying TJGEM's motion

to strike[2] and motion for sanctions, and denying the remaining motions as moot.
Appx. 1396. The memorandum opinion held that the Republic and the AMA were
entitled to foreign sovereign immunity under the FSIA and that the action should
be dismissed in its entirety, against all defendants, under the doctrine articulated in
*Pimentel*. Appx. 1408, 1411.

   The opinion summarized TJGEM's allegations and noted that TJGEM's
argument, in essence, was that "because the sewer reconstruction project was to be
paid for by a loan from the Expert-Import Bank of the United States, Ghana must
be engaging in commercial activity." Appx. 1404. The opinion explained,
however, that TJGEM was not challenging the validity of the sewer reconstruction
contract or the memorandum of understanding that led to the Export-Import Bank
considering a loan, but rather allegedly tortious conduct that occurred in Ghana.
*Id*. The opinion elucidated that the commercial activity exception applies only
when the domestic commercial activity constitutes an element of a claim that
would entitle the plaintiff to relief under its theory of the case, but noted that none

---

[2]      The District Court held that "[s]ince the Ghana Defendants are challenging
the subject matter jurisdiction of the Court under Federal Rule of Civil Procedure
12(b)(1), the Court may properly 'consider the complaint supplemented by
undisputed facts evidenced in the record, or the complaint supplemented by
undisputed facts plus the court's resolution of disputed facts.' *Coalition for
Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003); *Gammill
v. U.S. Dep't of Educ.*, No. 11-409, 2013 WL 6053544 , at *1, n.1 (Nov. 18, 2013)
(same). Therefore, the plaintiff's Motion to Strike is denied as to the declarations
pertaining to the Ghana Defendants' 12(b)(1) motion." Appx. 1402-03.

of the "commercial activities" alleged by TJGEM had any connection with the events underlying TJGEM's claims. Appx. 1405.

The District Court, noting that TJGEM based its claims against the Defendants on the actions of the single official, Vanderpuije, and that TJGEM had conceded that Vanderpuije lacked actual authority to contract for the Accra sewer system project, further held that the commercial activity exception could not apply because "the actions undertaken by Defendant Vanderpuije were not of or by a foreign state." Appx. 1405-07.

The opinion also held that TJGEM had failed to show the requisite "direct effect" in the United States sufficient to bring the Defendants' actions within the commercial activity exception. Appx. 1407. TJGEM, the District Court noted, had not claimed that the alleged torts had any effect in the United States beyond allegedly injuring an American company. *Id*. (citing to *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013) ("If a loss to an American individual and firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIA's provision of immunity for foreign states.").) The District Court also noted that the only "fact" offered by TJGEM in support of a "direct effect" was that several Ghanaian officials met with the Export-Import Bank in Washington, D.C., but that such a visit was insufficient to

trigger the application of the commercial activity exception.  Appx. 1407-08 (citing

*Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094,

1109 (D.C. Cir. 1982) (finding two meetings by foreign officials regarding contract

for services with U.S. enterprise in United States too "transitory and insubstantial"

to trigger commercial activity exception).)

The District Court thus concluded that TJGEM had failed to meet its burden

of showing that a FSIA exception applied and, consequently, had failed to

overcome the presumption of sovereign immunity.  Appx. 1408.  The District

Court therefore held that it lacked subject matter jurisdiction over the claims

against the Republic or the AMA.  Appx. 1408.

Finally, the District Court held that Fed. R. Civ. P. 19 and *Pimentel*

compelled dismissal of the action against all defendants.[3]  TJGEM was "asking for

an examination of the reasons for, and propriety of, a foreign sovereign's decision

to award a contract for a construction project in a foreign state," the District Court

noted, and held that such an examination is prohibited by *Pimentel* because the

Republic and the AMA have a "legitimate interest in 'events of . . . political

significance for the Republic and its people."  Appx. 1410.  For example, the

---

[3]      TJGEM did not respond to this argument in its opposition to the Motion to Dismiss.  Therefore, the District Court noted that it could treat the failure to oppose the argument as a decision to concede the argument.  Nevertheless, the District Court proceeded to address the merits of the argument under *Pimentel* and found that the doctrine required dismissal.  Appx. 1409.

-10-

District Court pointed to the fact that the proposed project would alleviate a flooding problem with the attendant savings of hundreds of lives and millions of dollars.  Appx. 1410.  In addition, TJGEM had alleged that a major Ghanaian official, Vanderpuije, engaged in corrupt practices.  Appx. 1410.  Such matters of substantial domestic and political significance, the District Court held, "fall[] squarely within the types of interests . . . that could be compromised by adjudication of this suit in the United States."  Appx. 1410-11.

Having dismissed the case as to all defendants, the District Court did not reach the Rule 19(b) or Rule 12(b)(6) issues.

On January 28, 2014, TJGEM filed a motion to reconsider the December 31, 2013, decision.  Appx. 1417-69.  TJGEM's motion to reconsider presented only arguments it previously asserted, or could have asserted, and pointed to no new evidence or grounds upon which to base reconsideration.  Appx. 1563.  The District Court denied the motion for reconsideration on February 21, 2014, holding that TJGEM did not offer new evidence or new law and did not show "clear error" in the Court's December 31, 2013, decision.  Appx. 1563-64.

TJGEM now brings this appeal.

## STANDARD OF REVIEW

This Court reviews a decision granting a motion to dismiss on FSIA grounds *de novo*. *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1169 (D.C. Cir. 1994).

This Court reviews a decision dismissing a case based on Fed. R. Civ. P. 19 for abuse of discretion. *Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank of Washington*, 699 F.2d 1274, 1276 (D.C. Cir. 1983). A district court abuses its discretion when it makes an error of law. *Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012).

This Court reviews a district court's findings of fact for clear error. *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 847 (D.C. Cir. 2000). This Court also reviews the district court's admission of evidence for clear error. *U.S. v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009). When applying the clear error standard of review, this Court will affirm the district court's findings unless it is "left with the definite and firm conviction that a mistake has been committed." *Id.*

# SUMMARY OF THE ARGUMENT

The District Court properly dismissed the Republic and the AMA for lack of subject matter jurisdiction on grounds of foreign sovereign immunity.

The Republic and the AMA are indisputably "foreign states."  Under the FSIA, no jurisdiction obtains over such foreign states unless one of the exceptions specified in the FSIA applies.  The burden is on the plaintiff to overcome the presumption of immunity by establishing one of the enumerated exceptions.  TJGEM did not, and cannot, establish that any of the FSIA exceptions applies.

TJGEM's attempt to invoke the FSIA's "commercial activity" exception is without basis.  The first clause of the commercial activity exception does not apply because none of TJGEM's asserted causes of action is "based upon" (a) a commercial activity (b) carried on in the United States (c) by a foreign state.  TJGEM asserts claims based upon allegedly tortious conduct – not commercial activity.  The alleged torts occurred in Ghana, not in the United States.  The only alleged commercial activity occurring in the United States had no connection with the underlying claims asserted by TJGEM.  Moreover, TJGEM's asserted causes of action against the Republic and the AMA are based solely upon the alleged conduct of Vanderpuije.  Vanderpuije, however, lacked actual authority to contract for reconstruction of the Accra sewer system (or to engage in any of the other alleged acts), meaning that his alleged actions cannot be considered actions of the

Republic or the AMA.

Nor did TJGEM establish that its asserted causes of action are based on an act outside the United States "in connection with a commercial activity of the foreign state . . . that causes a direct effect in the United States."  Vanderpuije's alleged acts were torts, not actions "in connection with a commercial activity." Moreover, the alleged actions did not cause any "direct effect" in the United States.

Similarly unavailing is TJGEM's attempt to invoke the FSIA's waiver exception.  TJGEM did not assert the waiver exception until after the District Court had issued its order dismissing the case; it therefore cannot assert application of the exception on appeal.  Further, TJGEM points to no facts supporting its argument; the declaration that TJGEM claims establishes a waiver merely says that TJGEM could have pursued its purported causes of actions in Ghana.

TJGEM also cannot show that the District Court abused its discretion in dismissing the matter against the remaining defendants under Fed. R. Civ. P. 19 and the Supreme Court's holding in *Pimentel*.  The Republic and the AMA are required entities under Rule 19(a) because, having been dismissed, their interests in the subject matter of the litigation would not be protected.  Allowing the case to proceed would have had considerable potential to injure the interests of the Republic and the AMA – interests that are of great political, social, and economic interest to the Ghanaian people.  Following the Supreme Court's holding in

-14-

*Pimentel*, dismissal of the case against the remaining defendants was required.

Finally, TJGEM cannot show clear error in the District Court's consideration of declarations and exhibits submitted by the Ghanaian Defendants in support of their Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction.  Such materials are properly considered by a court in ruling on a Rule 12(b)(1) motion.

Accordingly, this Court should affirm the District Court's December 31, 2013, order dismissing the case with prejudice.

## <u>ARGUMENT</u>

**I.  The District Court Properly Dismissed the Republic and the AMA on the Grounds of Foreign Sovereign Immunity.**

It is undisputed that the Republic and the AMA are "foreign states."  Appx. 1402; 28 U.S.C. § 1603(a)-(b).  The FSIA is the "sole basis for obtaining jurisdiction over a foreign state."  *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989).  It "contains a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities."  *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983).  Unless one of the FSIA's three enumerated exceptions applies, "a foreign state shall be immune from the jurisdiction of the courts of the United States."  28 U.S.C. § 1604; *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1182 (D.C. Cir. 2013).

A foreign state is presumptively immune from the jurisdiction of United States Courts and, unless a specified exception applies, a federal court lacks subject matter jurisdiction over a claim against a foreign state.  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 299 (D.C. Cir. 2005).  The presumption of immunity is overcome only if the plaintiff shows that one of the exceptions to immunity provided in 28 U.S.C. §§ 1605-07 applies.  *TMR Energy Ltd.*, 411 F.3d at 299; *Bell Helicopter Textron*, 734 F.3d at 1183.

Although TGJEM, citing *Princz*, 26 F.3d at 1171, argues that the burden is on the foreign sovereign to disprove the applicability of the exceptions, the argument is misplaced. The cited language from *Princz* refers to the foreign state's ultimate burden of *persuasion*, not to the initial burden on the plaintiff to proffer evidence establishing an exception to sovereign immunity under the FSIA.

The District Court held that TJGEM failed to meet its burden to produce evidence sufficient to demonstrate that an FSIA exception applied. Appx. 1404. The District Court's analysis is correct.

### A.    The District Court Correctly Held That the Commercial Activity Exception Does Not Apply to This Case.

In its FAC, TJGEM invoked the commercial activity exception in Section 1605(a)(2) of the FSIA. Appx. 37, 46. The District Court concluded that the exception does not apply. Appx. 1408.

The FSIA's commercial activity exception provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States . . .
> (2) in which the action is based upon commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

28 U.S.C. § 1605(a)(2). As discussed below, the exception is inapplicable to the facts of this case.

### 1. TJGEM Offered Only Assertions, Not Evidence, In Its Attempt to Overcome the Presumption of Sovereign Immunity.

The District Court noted that, faced with a Motion to Dismiss on foreign sovereign immunity grounds, TJGEM did not "offer[] any affidavits or evidence, as required under the burden shifting framework of the FSIA, to disprove the presumption." Appx. 1404. TJGEM does not dispute this, but argues that the mere allegations in the FAC were sufficient to overcome the presumption. App. Br. 37. TJGEM is wrong on the law and, more importantly, misses the point that even its pleaded allegations are insufficient to establish an FSIA exception.

Where, as here, the jurisdictional challenge is not only a matter of law, but also involves a challenge to jurisdictional facts (such as the amount and nature of "commercial activity") and to mixed questions of law and fact (such as the actual authority of an agent to act for the sovereign), a court "may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant. Instead, the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

Moreover, TJGEM overlooks the fact that the District Court did not end its analysis by noting TJGEM's lack of affidavits or other evidence on the

-18-

jurisdictional issue, but also analyzed the sovereign immunity issues by looking to TJGEM's pleadings.  TJGEM has no answer for the District Court's conclusion that "[t]o the extent [the allegations in the FAC] are 'facts' and not legal conclusions, they do not help the plaintiff's case."  Appx. 1404.

### 2.  The District Court Properly Held That None of TJGEM's Causes of Action Is "Based Upon Commercial Activity Carried on in the United States."

Under the FSIA, the phrase "commercial activity carried on in the United States by a foreign state" means "commercial activity carried on by such state and having substantial contact with the United States."  *See* 28 U.S.C. § 1603(e).  The acts of which TJGEM complains, however, (a) occurred in Ghana; (b) involved alleged torts, not commercial activity; and (c) did not involve a "foreign state" at all, but rather only a government official who lacked actual authority to engage in contracting of the type addressed in the FAC.

As the District Court observed, the essence of TJGEM's argument for application of the exception is that "because the sewer reconstruction project was to be paid for by a loan from the Export-Import Bank of the United States, Ghana must be engaging in commercial activity."  Appx. 1404.  The flaw in that assumption, as the District Court noted, is that none of TJGEM's asserted causes of action pertains to the Export-Import Bank loan itself, but rather to "allegedly tortious conduct that occurred in Ghana, *i.e.*, the alleged extortion and

-19-

misappropriation." Appx. 1405. For the same reason, TJGEM's argument on appeal that the memorandum of understanding between the Republic and Conti was signed in the United States is of no moment, since TJGEM does not allege that the signing itself was wrongful, but that the memorandum of understanding itself allegedly contained "trade secrets" allegedly misappropriated *in Ghana*.

TJGEM has no answer for the District Court's holding that "the commercial exception to the FSIA applies only when the 'domestic commercial activity constitutes an 'element[] of a claim that . . . would entitle [the plaintiff] to relief under [its] theory of the case.''" Appx. 1405 (quoting *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1146 (D.C. Cir. 1994)). Neither of the two activities that TJGEM alleges were carried out in the United States – Conti's signing of the memorandum of understanding and the discussions concerning an Export-Import Bank loan – is an element of TJGEM's claims. Indeed, TJGEM does not allege that either activity was wrongful in any sense. As the Supreme Court observed in *Nelson*, application of the "commercial activity" exception depends not on whether there exist arguably commercial activities *related* to the acts giving rise to the cause of action, but whether the commercial activities "form the basis for" the cause of action. *Nelson*, 507 U.S. at 358.

### 3. The District Court Correctly Held That the Alleged Conduct of Defendant Vanderpuije Does Not Constitute Conduct By a "Foreign State."

TJGEM's attempt to invoke the "commercial activity" exception also fails because TJGEM does not identify any arguably commercial activity "of a foreign state" – a necessary element of the exception. *See* 28 U.S.C. § 1605(a)(2). Rather, TJGEM merely argues that *Vanderpuije* misrepresented his authority to award the contract for the rehabilitation of the sewer system in order to induce TJGEM to bid on the project and, allegedly, to pay him a bribe. As TJGEM acknowledges in alleging that Vanderpuije misrepresented his authority, however, Vanderpuije lacked actual authority under Ghanaian law to award the sewer rehabilitation contract. Consequently, Vanderpuije's alleged actions cannot be considered actions of the Republic.

Conduct by a government official cannot be attributed to a foreign state unless the official had *actual authority* to engage in such conduct. *See Phaneuf v. Rep. of Indonesia*, 106 F.3d 302, 307 (9th Cir. 1997).

In *Phaneuf*, holders of promissory notes allegedly issued by an Indonesian instrumentality sued Indonesia, invoking the commercial activity exception. Indonesia "contend[ed] that there was no commercial activity *of the foreign state*" because the subject foreign government officials had "exceeded the scope of their authority in issuing and certifying the validity of the notes." *Phaneuf*, 106 F.3d at

-21-

307 (emphasis in original).  The Ninth Circuit held that "an agent must have acted *with actual authority* in order to invoke the commercial activity exception against a foreign state."  *Id*. at 308 (emphasis added).  "When an agent acts beyond the scope of his authority, however, that agent is not doing business which the sovereign has empowered him to do."  *Id*. (quotations omitted).  "If the foreign state has not empowered its agent to act, *the agent's unauthorized acts cannot be attributed to the foreign state*; there is no activity by the foreign state."  *Id*. (emphasis added).  The Fourth and Fifth Circuits have both followed *Phaneuf*. *See, e.g., Velasco v. Gov't of Indonesia*, 370 F.3d 392 (4th Cir. 2004) (commercial activity exception did not apply where Indonesian ambassador had issued a promissory note without obtaining necessary approvals under Indonesian law; Fourth Circuit held "we concur with the position of the Ninth Circuit [in *Phaneuf*] and hold that the commercial activity exception may be invoked against a foreign state only when its officials have actual authority" and thus "whether a third party reasonably perceives that the sovereign has empowered its agent to engage in a transaction … is irrelevant if the sovereign's constitution or laws proscribe or do not authorize the agent's conduct …"); *Dale v. Colagiovanni*, 443 F.3d 425, 429 (5th Cir. 2006) ("the plaintiffs must demonstrate that the government agent acted with the actual authority of the state to trigger" an FSIA exception; "the apparent authority of the state is insufficient").

Under Ghanaian law, Vanderpuije lacked the authority to award a contract for rehabilitating the Accra sewer system because all government contracts require multiple approvals by various governmental entities under the 1992 Ghanaian Constitution, the Procurement Act, the Local Government Act, and the Environmental Protection Agency Act. Appx. 914 - 16 (Quashigah Dec. at ¶¶ 14 - 21). TJGEM conceded this crucial point when it alleged that only the central government could contract for and finance the Accra sewer system project. Appx. 86 (FAC ¶ 148)("only the central government could contract for and finance the Accra sewer system project or any other such major infrastructure project, [and] political subdivision such as the AMA in the Republic of Ghana are not granted power under its constitution and statutes to enter into contracts nor to borrow funds."); Appx. 126 (FAC ¶ 314) (the AMA "did not have power under the constitution and laws of the Republic of Ghana to enter into said sewer project contract nor to borrow funds to finance said project."); Appx. 85 (FAC ¶ 143) (Vanderpuije had no authority to enter into the sewer project contract or to borrow funds to finance the project). Vanderpuije's alleged actions, therefore, cannot be considered actions – much less "commercial activity" – of the Republic. *Phaneuf*, 106 F.3d at 308.

The District Court noted that TJGEM failed to address the holding in *Phaneuf*. Appx. 1406. TJGEM now offers a variety of rear-guard arguments,

none of which is appropriate on appeal.  *See Potter v. District of Columbia*, 558 F.3d 542, 547 (D.C. Cir. 2009) (even on *de novo* review, an appellate court reviews only those arguments made in the district court).  The new arguments, moreover, are baseless.

For example, TJGEM, citing *East Europe Int'l Sales Corp. v. Terra*, 467 F. Supp. 383, 390 (S.D.N.Y. 1979), argues that "the activities of an agent may be attributed to the principal for jurisdictional purposes," and therefore draws the conclusion that Vanderpuije's alleged acts "may be attributed to both the Republic of Ghana and the AMA."  App. Br. at 49.  The conclusion does not follow from the initial observation.  Although an agent's actions *may* be attributed to a principal, *Phaneuf* makes it plain that a government official's acts may be imputed to a foreign sovereign for FSIA purposes *only* if the official has *actual authority* to carry out the acts in question.  Vanderpuije had no actual authority for the actions on which TJGEM bases its claims; his alleged actions therefore cannot be considered acts "of the foreign state."[4]

TJGEM next asserts that the acts of various other officials, such as Samuel Ayeh-Datey, Kwabena Duffuor, President Atta Mills, and embassy official Padi

---

[4]      *East Europe* says nothing to the contrary.  In fact, the passage in *East Europe* cited by TJGEM – which concerned *personal* jurisdiction rather than subject matter jurisdiction under the FSIA – refused to find personal jurisdiction based on an agency relationship because the Romanian embassy was not an "authorized representative" of the defendant.

-24-

Adjirackor "can be attributed to the government of Ghana."  App. Br. at 49.

Again, however, TJGEM fails to set forth the precise acts of these individuals that

(a) would both be considered "commercial activity" and (b) "form the basis for"

TJGEM's claims.  *See Nelson*, 507 U.S. at 358.[5]  Furthermore, TJGEM offers no

evidence to suggest that any of these individuals had actual authority to engage in

any of the acts that "form the basis for" TJGEM's claims.  *See Phaneuf*, 106 F.3d

at 308.  Merely listing Ghanaian officials and referring generally to their "acts" is

insufficient to establish an exception to sovereign immunity under the FSIA.

### 4. The District Court Properly Held That the Alleged Commercial Activity in Ghana Did Not Have a Direct Effect in the United States.

The third clause of Section 1605(a)(2) applies when the claim is based

"upon an act outside the territory of the United States in connection with a

commercial activity of the foreign state elsewhere and that act causes *a direct*

*effect in the United States*."  28 U.S.C. § 1605(a)(2) (emphasis added).  Under the

FSIA, an effect is "direct" if it "follow[s] as an immediate consequence of the

defendant's . . . activity."  *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607,

618 (1992).  This requires more than a showing that the acts of which a plaintiff

---

[5]     For example, TJGEM alleges that Duffuor signed a memorandum of understanding with Conti.  Appx. 111 (FAC at ¶ 258).  Although TJGEM claims that the memorandum of understanding itself contained TJGEM "trade secrets," it does not allege that signing the document was itself wrongful.

complains would result in a loss to an American Company, *Bell Helicopter Textron,* 734 F.3d at 1184, or that the acts would have *some* effect in the United States.  *See, e.g., United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232, 1238 (10th Cir. 1994) (Congress "did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States.").  Courts "'often look to the place where legally significant acts giving rise to the claim occurred' in determining the place where a direct effect may be said to be located."  *Id*. at 1239 (quoting *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 152 (2nd Cir.1991), *aff'd*, 504 U.S. 607 (1992)).  Therefore, while a breach of a contract that is to be performed in the United States constitutes a "direct effect in the United States," *Weltover*, 504 at 619, the fact that funds that were to have been received in London under a contract would have been transferred to the United States does not constitute a "direct effect in the United States."  *United World Trade,* 33 F.3d at 1239.

The only "direct effect" that TJGEM alleges is that Vanderpuije's alleged torts caused it to lose out on a construction contract *in Ghana*.  That some of TJGEM's alleged "trade secrets," supposedly misappropriated by Vanderpuije in Ghana, made their way into a subsequent document (the memorandum of understanding with Conti) that was signed in the United States, is far too removed to constitute a "direct effect in the United States."  *See United World Trade,* 33

F.3d at 1239.  Likewise, Vanderpuije's single meeting in Washington with the

Export-Import Bank in an attempt to secure financing for the contract with Conti

does not amount to a "direct effect in the United States" of the alleged torts.  *Id*.

TJGEM argues on appeal that it has asserted RICO claims and that RICO

claims come "within the third prong of the commercial activity exception of the

FSIA."  App. Br. 55.  TJGEM has the law backwards.  A RICO claim does not

establish an exception to foreign sovereign immunity under the FSIA; rather, an

exception to foreign sovereign immunity is a *prerequisite* for asserting a RICO

claim, as the authorities cited by TJGEM make plain.  *See Southway v. Central

Bank of Nigeria*, 198 F.3d 1210, 1216 (10th Cir. 1999) (the FSIA confers subject

matter jurisdiction upon the district court over civil RICO claims against foreign

states *provided* that one of the exceptions to foreign sovereign immunity in the

FSIA applies).

In short, TJGEM fails to establish that the alleged torts had any "direct effect

in the United States."

### B.      The FSIA's Waiver Exception Does Not Apply.

TJGEM argues on appeal that the FSIA's waiver exception applies.  App.

Br. 42-43.  This exception provides that a foreign state is not subject to sovereign

immunity in any case "in which the foreign state has waived its immunity either

explicitly or by implication, notwithstanding any withdrawal of the waiver which

the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1602(a)(1).  TJGEM did not assert the waiver exception until after the District Court had issued its order dismissing the case, and therefore cannot assert it on appeal.  Furthermore, TJGEM's attempt to invoke the waiver exception is unavailing.

TJGEM did not allege that the waiver exception applied in the FAC.  Appx. 42-44.  Nor did TJGEM oppose the Ghanaian Defendants' Motion to Dismiss for lack of subject matter jurisdiction on the grounds that the waiver exception applied.  Appx. 1103-05.  The District Court thus did not address this argument—because it had not been made— in its December 31, 2013 decision dismissing the case for lack of subject matter jurisdiction.  Appx. 1395-1414.

The first time TJGEM raised its waiver argument was in a three-paragraph supplemental memorandum in support of its motion to reconsider the District Court's order of dismissal, which was filed after the 28-day deadline in which to bring a motion for reconsideration.  Appx. 1471-72.

Arguments raised for the first time in a Rule 59(e) motion are waived, and are not preserved for appellate review.  *See, e.g., GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012); *District of Columbia v. Doe*, 611 F.3d 888,

896 (D.C. Cir. 2010).[6]  TJGEM's argument is therefore not properly before this Court.

In any event, TJGEM's attempt to invoke the waiver exception to the FSIA has no merit.  TJGEM asserts that Professor Quashigah's declaration establishes that the Republic and the AMA have waived their sovereign immunity.  App. Br. 41-43.  Professor Quashigah's declaration says no such thing.  Far from addressing a waiver of foreign sovereign immunity, the declaration merely establishes that TJGEM could pursue its causes of action against the Ghanaian Defendants in the Ghanaian courts.  Appx. 911 at ¶ 4; Appx. 917 at ¶ 23.

## II. The District Court Did Not Abuse Its Discretion in Dismissing the Remaining Appellees Under Rule 19 and *Pimentel*.

The District Court correctly held that Fed. R. Civ. P. 19 and *Pimentel* required dismissal of the FAC as against all Appellees.[7]

In *Pimentel*, the Supreme Court held that, when foreign states are required parties under Fed. R. Civ. P. 19, but are subject to foreign sovereign immunity, the remainder of the action must be dismissed "where there is the potential for injury

---

[6]    The District Court declined to consider TJGEM's belated argument on the waiver exception.  Appx. 1559-1567.

[7]    TJGEM, citing *Samantar v. Yousef*, 560 U.S. 305 (2010), argues that the FSIA is inapplicable to suits against foreign officials.  App. Br. 55.  This argument is inapposite.  The District Court did not dismiss the FAC against Duffuor and Vanderpuije on the grounds of foreign sovereign immunity; rather, the District Court dismissed the claims against the individual defendants based on Rule 19 and *Pimentel*.  Appx. 1411.

to the interests of the absent sovereign." *Pimentel*, 553 U.S. at 867. In that case, the district court dismissed the Republic of the Philippines and the Philippine Presidential Commission on Good Governance, on grounds of sovereign immunity, from an interpleader action commenced to determine the ownership of property allegedly stolen by former Philippine President Ferdinand Marcos. The question before the Supreme Court was whether the dismissal of the Republic and the Commission required dismissal of the entire action, including the claims of the class of human rights victims who had obtained a nearly $2 billion judgment against Marcos and his estate.

The Supreme Court first held that the Republic and the Commission were required entities under Fed. R. Civ. P. 19(a) because "[w]ithout [them] as parties . . . their interests in the subject matter are not protected." *Pimentel*, 553 U.S. at 864 (quoting *In re Republic of Philippines*, 309 F.3d 1143, 1152 (9th Cir. 2002)). The Court then turned to the factors listed in Fed. R. Civ. P. 19(b) to determine whether dismissal of the Republic and the Commission required dismissal of the entire action.

The Court first noted that the sovereign status of the Republic and the Commission required considerable weight in the analysis, since "[g]iving full effect to sovereign immunity promotes the comity interests that have contributed to the development of the immunity doctrine. *Pimentel*, 553 U.S. at 866. The Court

-30-

added that "[t]here is a comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so. The dignity of a foreign state is not enhanced if other nations bypass its courts without right or good cause." *Id*. Finally, the Court held that "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action *must* be ordered where there is a potential for injury to the interests of the absent sovereign." *Id*. at 867 (emphasis added).

Following *Pimentel*, the District Court held that the dismissal of the Republic and the AMA on sovereign immunity grounds required dismissal of the remainder of the action. Appx. 1411. The District Court first observed that TJGEM's "claims are, at base, those of a disappointed bidder that failed to win a contract with a foreign government" and that TJGEM was "asking for an examination of the reasons for, and propriety of, a foreign sovereign's decision to award a contract for a construction project in a foreign state." Appx. 1409 – 10.

The District Court then enumerated the reasons why allowing the suit to proceed had the potential for injury to the interests of the Republic and the AMA. The District Court held that the Republic and the AMA have a "legitimate interest in 'events of . . . political significance for the Republic and its people.'" Appx. 1410 (quoting *Pimentel*, 553 U.S. at 866). The proposed project would alleviate a flooding problem with the attendant savings of hundreds of lives and millions of

dollars – a matter of significant importance to the people of Ghana.  Appx. 1410.

In addition, TJGEM has alleged that a major Ghanaian official, Vanderpuije,

engaged in corrupt practices.  Appx. 1410.  The District Court held that "such

matters of substantial domestic and political significance fall[] squarely within the

types of interests held by the Ghana Defendants that could be compromised by

adjudication of this suit in the United States."  Appx. 1410-11.  Because the

Republic and the AMA "have a significant 'interest relating to the subject of the

action' and 'disposing of the action in the [sovereign defendants'] absence may . . .

impede the [sovereign defendants'] ability to protect the[ir] interest," the District

Court concluded that the Republic and the AMA were required parties under Fed.

R. Civ. P. 19(a)(1)(B) and that *Pimentel* therefore required dismissal of the action.

Appx. 1411.

The District Court's decision comports fully with *Pimentel* and does not

constitute an abuse of discretion.

TJGEM is in no position to argue otherwise.  TJGEM did not address the

issue in its opposition to the Ghanaian Defendants' Motion to Dismiss.  Appx.

1409.  When TJGEM took issue with this holding in its motion for reconsideration,

the District Court noted in its order denying the motion for reconsideration that

TJGEM could not cite to any location in its opposition brief in which it opposed

the Ghanaian Defendants' *Pimentel* argument.  Appx. 1566.  TJGEM therefore

conceded the *Pimentel* issue, and may not now raise the issue on appeal.  *See FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997); *Shankar v. ACS-GSI*, 28 Fed.Appx. 344, 345 (D.C. Cir. 2007).

None of TJGEM's arguments on appeal, moreover, suggests that the District Court erred in its holding.  TJGEM's argument that *Pimentel* does not apply because the Republic and the AMA are, in light of their dismissal, "not . . . subject to money damages" is beside the point.  *Pimentel* is not limited to *financial* interests, as TJGEM suggests; indeed, the Supreme Court made it clear that the interests there at issue were "events of historical and political significance." *Pimentel*, 553 U.S. at 866.

Similarly misplaced is TJGEM's argument that "combating public corruption" militates against dismissal.  As the District Court properly observed, the accusation of corruption against a Ghanaian public official, involving acts that allegedly occurred in Ghana, is precisely the type of interest that notions of international comity dictate should be decided in Ghanaian courts, not American courts.  Appx. 1410 -11 (citing *Pimentel*, 553 U.S. at 869); *see also Pimentel*, 553 U.S. at 866 ("There is a comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so.").

Equally infirm is TJGEM's argument that it is "not contesting the validity of the Ghana-Conti contract, but is seeking money damages . . . for tortious

misconduct." App. Br. at 60. Apart from undermining its own arguments with respect to the "commercial activity" exception to the FSIA, TJGEM's argument misses the point. *Pimentel* is not limited in its scope to the remedy sought by a plaintiff, but rather the consequences – political, social, historic and otherwise – that a decision in an American court would have on the foreign sovereign. *Pimentel*, 553 U.S. at 866. TJGEM may claim that it is not contesting the validity of the Republic's contract with Conti, but the very essence of its FAC is that the contract should have been awarded to TJGEM. Moreover, if the District Court were to adjudicate TJGEM's claims, the matter would necessarily amount to "bypass[ing]" the Ghanaian courts with respect to issues of critical importance to Ghana, such as construction of the sewer improvement infrastructure and the authority and responsibilities of various Ghanaian government officials. *See Pimentel*, 553 U.S. at 866.[8]

Because TJGEM did not address the *Pimentel* issue before the District Court, and because it cannot show that the District Court abused its discretion in following *Pimentel* and dismissing the action, the District Court's order must be affirmed.

---

[8]     TJGEM's reference to *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., International*, 493 U.S. 400 (1990), is not apt. *Kirkpatrick* concerned the act of state doctrine, and did not address Rule 19 or *Pimentel*.

**III.    The District Court Properly Admitted the Declarations and Exhibits Offered by the Ghanaian Defendants on the Issue of Subject Matter Jurisdiction.**

TJGEM contends that the District Court erred when it denied TJGEM's motion to exclude the declarations and exhibits offered by the Ghanaian Defendants in support of their Motion to Dismiss on the question of subject matter jurisdiction.  App. Br. 64.  There is no merit in TJGEM's argument.

It is beyond cavil that a court may consider materials outside the pleadings in resolving a motion brought under Fed. R. Civ. P. 12(b)(1).  *See, e.g., Mineta*, 333 F.3d at 198; *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); Fed. R. Civ. P. 44.1.  Nor does the submission of materials outside the pleadings on a Rule 12(b)(1) motion convert the motion to a summary judgment motion.  *See, e.g., Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009).

It was entirely proper for the District Court to consider the declarations submitted by the Ghanaian Defendants.  The declarations themselves, moreover, were entirely proper and directed to important points of Ghanaian law, governance, and jurisdiction.  The District Court's denial of TJGEM's motion to exclude the declarations was not clear error.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the appealed order and judgment.

Dated:  March 9, 2015

Respectfully submitted,

*/s/* Creighton R. Magid
CREIGHTON R. MAGID
Dorsey & Whitney LLP
1801 K Street, NW, Suite 750
Washington, DC 20006
Telephone:  (202) 442-3555
Fax:  (202) 442-3199
magid.chip@dorsey.com

JUAN C. BASOMBRIO (*pro hac vice*)
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626
Telephone:  (714) 800-1405
basombrio.juan@dorsey.com

Counsel for Appellees Republic of Ghana,
Accra Metropolitan Assembly, Alfred O.
Vanderpuije, and Kwabena Duffuor

*/s/*
ROBERT J. CYNKAR
McSweeney, Cynkar & Kachouroff, PLLP
10506 Milkweed Drive
Great Falls, VA 22066
Telephone: (703) 621-3300
rcynkar@mck-lawyers.com

RICHARD EVAN GREENBERG
Greensfelder, Hemker & Gale
Suite 2000
10 South Broadway
St. Louis, MO 63102
Telephone:  (314) 241-9090
reg@greensfelder.com

Counsel for Appellees Kwame Building
Group, Inc., Anthony Thompson, and Craig
Lucas

*/s/*_____
RONAN J. MCHUGH
Gordon & Rees, LLP
1300 I Street, NW
Suite 825
Washington, DC 20005
Telephone:  (202) 399-1009
Fax:  (202) 800-2999
rmchugh@gordonrees.com

Counsel for Appellees Gideon Adjetey and
Jonathan Adjetey

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), D.C. Circuit

Rule 32(a), the undersigned certifies that this brief complies with the applicable

type-volume limitations. This brief was prepared using a proportionally spaced

type (Times New Roman, 14 point). Exclusive of the portions exempted by

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule

32(a)(1), this brief contains 8,029 words. This certificate was prepared in reliance

on the word-count function of the word-processing system (Microsoft Word 2010)

used to prepare this brief.

Dated: March 9, 2015

*/s/* Creighton R. Magid
Creighton R. Magid

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY THAT, on this 9th day of March, 2015, I electronically filed the foregoing Joint Appellees Brief with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the Court's CM/ECF system, which will send notice of such filing to the registered CM/ECF users.

*/s/* Creighton R. Magid

Creighton R. Magid